UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION


VERNON D. ULRICH,                    )
                                     )
                 Plaintiff,          )
                                     )
        v.                           )        No.  2:13CV45 SPM
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of Social Security,     )
                                     )
                 Defendant.          )


## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the Commissioner's final decision denying Vernon D. Ulrich's

application for disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401, *et seq.;* and application for supplemental security income

under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending

before the undersigned United States Magistrate Judge, with consent of the parties,

pursuant to 28 U.S.C. § 636(c).  Because the Commissioner's final decision is

supported by substantial evidence on the record as a whole, it is affirmed.

## I.    PROCEDURAL HISTORY

Plaintiff Vernon D. Ulrich applied for disability insurance benefits (DIB)

and supplemental security income (SSI) on January 28, 2011, claiming that he

became disabled on September 19, 2009, because of degenerative disc disease, chronic severe low back pain, depression, and arthritis in the wrists. (Tr. 168-69, 170-76, 204.)[1] On February 23, 2011, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 103, 104, 109-15.) Upon plaintiff's request, a hearing was held before an ALJ on May 10, 2012, at which plaintiff and a vocational expert testified. (Tr. 27-55.) On May 29, 2012, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform other work as it exists in significant numbers in the national economy. (Tr. 10-22.) On April 3, 2013, upon review of additional evidence, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, arguing that the ALJ improperly discounted the medical opinion rendered by the consulting physician, Dr. Russell. Plaintiff requests that the matter be reversed and remanded to the Commissioner for an award of benefits or for further proceedings.

Because the ALJ committed no legal error and substantial evidence on the

---

[1] Plaintiff previously filed an application for DIB, which an administrative law judge (ALJ) denied on September 18, 2009, after a hearing. The Appeals Council denied plaintiff's request for review on November 2, 2010. (Tr. 78-90, 91-95.) In the instant case, the ALJ gave this prior determination *res judicata* effect (Tr. 18), which the plaintiff does not challenge.

record as a whole supports his decision, the Commissioner's final decision that plaintiff was not disabled is affirmed.[2]

## II.   RELEVANT TESTIMONIAL EVIDENCE BEFORE THE ALJ

### A.   PLAINTIFF'S TESTIMONY

At the administrative hearing on May 10, 2012, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was forty-six years of age.  Plaintiff stands five-feet, ten inches tall and weighs 139 pounds.  Plaintiff is married and has one adult-aged child.  Plaintiff did not graduate from high school but obtained his GED and attended community college for three years.  Plaintiff served in the military from 1984 to 1987.  (Tr. 32-34.)  Plaintiff receives food stamps and health benefits from the Veterans Administration (VA).  (Tr. 35.)

Plaintiff's Work History Report shows that plaintiff worked as a production machine operator from July 1999 to July 2003.  From August 2003 to December 2006, plaintiff worked in construction as a subcontractor.  From December 2006 to January 2007, plaintiff worked as a return specialist for a mail order company. From January to August 2007, plaintiff worked in die services for a light metal

---

[2] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence.  Inasmuch as plaintiff challenges the decision only as it relates to Dr. Russell's opinion regarding his back impairment and not as it relates to any other impairment, the recitation of specific evidence in this Memorandum and Order is limited to only that evidence relating to the issue raised by plaintiff on this appeal.

manufacturer.  (Tr. 214.)

Plaintiff testified that he has low back pain that worsens with standing or sitting for extended periods of time or lifting anything over ten pounds.  Plaintiff testified that he tries to relieve the pain by taking hot showers and by lying down in his recliner with a lumbar support pillow.  Plaintiff testified that he receives his medical care through the VA.  Plaintiff testified that he previously underwent a micro discectomy and laminectomy that provided temporary relief.  (Tr. 37-38.)

As to his exertional abilities, plaintiff testified that he can stand in one position for about fifteen minutes, after which he experiences back spasms and weakness in his legs.  Plaintiff testified that he can walk one block.  Plaintiff testified that lifting items weighing ten pounds more than once causes sharp pain in his low back.  Plaintiff testified that he can sit for about half an hour before experiencing muscle spasms and a burning sensation in his right hip and down his legs.  (Tr. 40-41.)  Plaintiff testified that he can bend but that it is a slow process because he easily loses his balance.  (Tr. 41-42.)

As to his daily activities, plaintiff testified that he gets up, gets dressed, makes a simple breakfast, sits in his recliner for one to two hours, moves around and works on the computer for ten minutes, returns to his recliner, eats a simple lunch, and then visits his father for about half an hour.  (Tr. 40.)  Plaintiff testified that he drives to his father's house, which is about one mile from his home.  (Tr.

- 4 -

33, 40.) Plaintiff testified that he also reads a lot. (Tr. 48.) Plaintiff testified that he prepares cereal and sandwiches, but that his wife does most of the major cooking. Plaintiff testified that he may help with the dishes once a day. Plaintiff testified that his wife does the yard work. (Tr. 40.) Plaintiff testified that he goes grocery shopping with his wife once a month but that she carries the grocery bags. Plaintiff testified that he has no relatives other than his father and that he does not have many friends in town. (Tr. 49.)

**B.    TESTIMONY OF VOCATIONAL EXPERT**

Julie Speck, a vocational expert, testified at the hearing in response to questions posed by the ALJ and counsel.

Ms. Speck classified plaintiff's past work as a die worker, extrusion operator, and automobile mechanic as medium to heavy and skilled; as a construction worker as heavy and semi-skilled; as a machine operator as medium and skilled; as a salvage worker as medium to heavy and semi-skilled; and as a punch operator as light to medium and skilled. (Tr. 52-53.)

The ALJ asked Ms. Speck to assume an individual of plaintiff's age, education, and past work experience and to further assume the person to be limited to sedentary work in that he could lift ten pounds occasionally, less than ten pounds frequently, stand or walk for two hours, and sit for up to six hours. The ALJ asked Ms. Speck to further assume that the individual can occasionally climb

ramps or stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, crawl, and balance.  Ms. Speck testified that such a person could not perform any of plaintiff's past work but could perform other work such as die equipment operator, of which 500 such jobs exist in the State of Missouri and 28,000 nationwide; brush polisher, of which 500 such jobs exist in the State of Missouri and 28,000 nationwide; and component tester, of which 600 such jobs exist in the State of Missouri and 30,000 nationwide.  Ms. Speck further testified that if such a person needed to lie down in a recliner for one to two hours twice a day, he could not perform any job.  (Tr. 53-54.)

## III.   RELEVANT MEDICAL EVIDENCE BEFORE THE ALJ

An x-ray taken of plaintiff's lumbosacral spine on August 19, 2007, showed marked narrowing of the L5-S1 disc space.  (Tr. 385.)  An MRI of the lumbar spine dated September 26, 2007, showed minimal posterior disc bulge at L3-L4, moderate posterior disc bulge at L4-L5, mild asymmetric disc bulge at L5-S1, and laminectomies on the left at L5.  (Tr. 384.)  Plaintiff was diagnosed with degenerative disc disease and post-surgical changes in the lumbar spine.  (Tr. 375.)

Plaintiff participated in physical therapy on January 10, 2008, at the Veterans Affairs Medical Center (VAMC) in relation to his complaints of low to mid back pain with continued pain in his right gluteus and hip.  Plaintiff reported wearing a TENS unit in the morning until about noon.  Plaintiff reported doing

exercises a couple of times every day.  Plaintiff reported his current pain to be at a level five on a scale of one to ten.  Physical therapist Erin B. Miller noted plaintiff to have had laminectomies performed in 1994 and 2003.  Plaintiff was noted to walk with slow, stiff movements and to be very guarded.  Ms. Miller noted there to be no significant changes since plaintiff began treatment in October but that he continued to smoke, which further deteriorated his discs.  Ms. Miller recommended that plaintiff undergo consultation with the pain clinic and with neurosurgery.  (Tr. 292-94.)

On February 25, 2008, an epidural steroid injection was administered to the iliolumbar ligament (Tr. 290-92), which plaintiff subsequently reported provided little change to his pain (Tr. 288).

Plaintiff visited the neurosurgery clinic on February 29, 2008.  It was noted that plaintiff underwent a lumbar discectomy at L3-4 in 1995 and again in 2005.  Upon physical examination and review of the September 2007 MRI results, plaintiff was diagnosed with lumbar spondylosis.  Further diagnostic testing was ordered.  (Tr. 296-300.)

On March 6, 2008, plaintiff underwent a CT scan of the lumbar spine and a L4-5 diskogram, which showed small to moderate disc protrusion/herniation at the site of a previous micro discectomy at the L4-5 level; L5-S1 left laminectomy and left lateral recess scar formation from a previous discectomy; and L5-S1 moderate

left foraminal stenosis secondary to degenerative disease.  (Tr. 301-04.)

Plaintiff returned to the neurosurgery clinic on May 8, 2008, and was advised that he may benefit from an L4-5 posterior lumbar interbody fusion. Plaintiff decided to continue with conservative treatment.  (Tr. 313-14.)

Between March and September 2008, plaintiff visited the VAMC on four occasions for follow up appointments.  Throughout this period, plaintiff was noted to ambulate without difficulty, to have limited range of motion about his lower back, and to have tenderness to palpation along the lower back.  Sitting and supine straight leg raising was negative.  Plaintiff was prescribed Gabapentin,[3] Tramadol,[4] and Skelaxin[5] during this period and was instructed to apply heat and ice to the affected area, walk, and perform physical therapy exercises.  (Tr. 281-90.)

Plaintiff visited Dr. Jerome J. Mank on October 16, 2008, at the VAMC who noted plaintiff's history of chronic low back pain.  Plaintiff's current medications were noted to include Gabapentin and Tramadol.  During the examination, Dr. Mank observed plaintiff to be stooped and stiff with his gait, but Dr. Mank noted

---

[3] Gabapentin is an anticonvulsant used to control certain types of seizures and to relieve the pain of post-herpetic neuralgia. *Medline Plus* (last revised July 15, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html>.

[4] Tramadol is a narcotic analgesic used to relieve moderate to moderately severe pain. *Medline Plus* (last revised Oct. 15, 2013)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html>.

[5] Skelaxin is a muscle relaxant used to relax muscles and relieve pain and discomfort caused by muscle injuries. *Medline Plus* (last reviewed Sept. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682010.html>.

plaintiff to be upright and walking fluidly when going to his car. Straight leg raising was negative. Plaintiff had good strength and intact sensation in his lower extremities. Dr. Mank noted plaintiff to be reluctant to forward flex or extend back, and plaintiff was hyperesthetic over a wide area of the lumbar back. Dr. Mank diagnosed plaintiff with low back pain, L4-5 concordant disc protrusion/ herniation, status post L5-S1 hemilaminectomy, and left-sided stenosis. Plaintiff continued to not be interested in surgery. Plaintiff was instructed to return as scheduled or as needed. (Tr. 407-09.)

Plaintiff visited Nurse Practitioner (NP) Brandy Lynn Worley at the VAMC on April 8, 2009, and reported having a flare up of back pain with an increase in muscle spasms. NP Worley noted plaintiff's current medications to be Gabapentin and a thyroid medication. Physical examination showed plaintiff to have limited range of motion about the low back, a stooped posture, a limp on the right, and tenderness to palpation along the spine. NP Worley noted plaintiff to jump when his back was touched. NP Worley diagnosed plaintiff with low back pain and recommended that plaintiff take NSAIDs as needed and to alternate applying heat and ice to the affected area. NP Worley also instructed plaintiff to perform physical therapy exercises and to walk in order to improve his condition. Plaintiff was also instructed to continue with his TENS unit. Plaintiff reported wanting to avoid additional surgery. Flexeril was prescribed for muscle spasms. Plaintiff was

instructed to return in twelve months or as needed.  (Tr. 404-07.)

Plaintiff returned to NP Worley on April 14, 2010, who noted plaintiff not to be taking any medication.  Plaintiff reported that he had been participating in Narcotics Anonymous for the past fourteen months for drug abuse.  Plaintiff reported continued back pain.  Physical examination showed plaintiff to have limited range of motion about the low back, a stooped posture, a limp on the right, and tenderness to palpation along the spine.  NP Worley noted plaintiff to jump when his back was touched.  Deep tendon patellar reflexes were noted to be hyperactive bilaterally.  NP Worley diagnosed plaintiff with low back pain and recommended that plaintiff take NSAIDs as needed and to alternate applying heat and ice to the affected area.  NP Worley also instructed plaintiff to perform physical therapy exercises and to walk in order to improve his condition.  Plaintiff was also instructed to continue with his TENS unit.  It was noted that plaintiff was taking Excedrin back and body.  No narcotics were prescribed given plaintiff's history of abuse.  Plaintiff was instructed to return in ten to twelve months.  (Tr. 402-04.)

Plaintiff visited NP Worley on July 6, 2010, who noted plaintiff not to be taking any medication.  Plaintiff complained of low back pain with shooting pain down his legs, bilaterally, and cramps in his calves.  NP Worley noted plaintiff to have limited range of motion about the lumbar spine with exaggerated response

with palpation. Plaintiff reported having no feeling about the L3-4, and tenderness was noted about the lower lumbar spine. Plaintiff ambulated slowly with a stooped posture. NP Worley noted plaintiff to be unable to lie flat on his back with his legs extended. NP Worley diagnosed plaintiff with low back pain and recommended that plaintiff take NSAIDs as needed and to alternate applying heat and ice to the affected area. NP Worley also instructed plaintiff to perform physical therapy exercises and to walk in order to improve his condition. Plaintiff was also instructed to continue with his TENS unit. It was recommended that plaintiff resume Gabapentin to take at bedtime to help with radicular symptoms and cramping. No narcotics were prescribed given plaintiff's history of abuse. An x-ray of the lumbar spine was ordered. Gabapentin and Meloxicam[6] were prescribed. (Tr. 391-95.)

Plaintiff underwent a pain consultation at the VAMC on August 5, 2010. Dr. Osvaldo Acosta noted plaintiff to be taking Gabapentin. Physical examination showed plaintiff to have full range of motion about the upper and lower extremities and to have forward flexion to eighty degrees. Range of motion about the lumbar spine was normal. Straight leg raising was negative. Dr. Acosta noted the sacroiliac joint exam to be abnormal with standing, sitting, and lying down. Mild

---

[6] Meloxicam (Mobic) is an NSAID used to relieve pain, tenderness, swelling, and stiffness caused by arthritis conditions. *Medline Plus* (last reviewed Sept. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html>.

upper lumbar and lower thoracic spine somatic dysfunction was noted. Dr. Acosta diagnosed plaintiff with bilateral SI joint somatic dysfunction with mild pelvic, lumbar, and lower thoracic spine somatic dysfunction. Unbalanced muscles were noted about the low back. Adjustments to the ribs, lower back, and pelvis were performed. Plaintiff was instructed to advance to normal activities slowly and to call if he was out of alignment again. (Tr. 325-29.)

During this period, plaintiff received mental health treatment at the VAMC. On October 26, 2010, plaintiff reported to his mental health provider that he was teaching GED classes two mornings a week. On November 22, 2010, plaintiff reported that he walked his dogs whenever he felt stressed. (Tr. 387-88.)

Plaintiff underwent a consultative physical examination on January 3, 2011, at Columbia Orthopaedic Group. (Tr. 555-60.) Plaintiff reported having had back pain since he was eleven years old and that he underwent various chiropractic treatments throughout his life. Plaintiff reported that the pain became more severe in 1994 at which time he underwent a discectomy. Plaintiff reported that he was thereafter able to continue to work in construction until 2005. Plaintiff reported that he then experienced acute low back pain upon missing a lower rung on a ladder, after which he underwent additional surgery. Plaintiff reported developing pain again in 2007 after sustaining another fall and that he thereafter participated in physical therapy for six months. Plaintiff reported his pain to currently be in his

low back, radiating to both hips and down the left leg. Plaintiff reported his pain to worsen with standing, sitting for long periods, bending, and engaging in any physical activity involving his lower back. Plaintiff also reported experiencing some numbness in his left thigh. Dr. Garth R. Russell observed plaintiff to sit normally but to shift side to side, and to rise from a seated position with difficulty. Dr. Russell also observed plaintiff to walk with somewhat of an unsteady gait on the left. Physical examination showed chronic muscle spasm in the paraspinous muscles extending into the quadratus lumborum muscles. Tenderness was noted over the lumbosacral area and over both sacroiliac joints, more severe on the left. Limited range of motion was noted with forward flexion in the lumbar area. Straight leg raising was tight bilaterally but not truly positive. X-rays showed pelvic tilt to the left; moderate degenerative changes within the sacroiliac joints bilaterally, more severe on the right; mild to moderate degenerative changes within the hips; settling of the L4-5 disc space with degenerative changes; settling of the L5-S1 and L3-4; and a moderate amount of facet joint change within the L3-4, L4-5, and L5-S1 joints. Dr. Russell reviewed medical records dating from October 2004. Upon conclusion of the evaluation, Dr. Russell diagnosed plaintiff with degenerative disc disease, chronic, severe, with laminectomy L4-5 left, L5-S1; and secondary degenerative disc disease, severe. (Tr. 555-59.) Dr. Russell summarized his findings as follows:

It is my medical opinion that this patient does have degenerative disc disease which has required two previous surgeries to his back. He did respond quite well following the first surgery and returned to work doing heavy construction work. The pain recurred requiring a second surgery. The patient is a candidate for arthrodesis from the L3 area down to the S1 area. However, he does smoke and therefore the surgeons are hesitant to perform the procedure. He does have significant reactive depression requiring supportive therapy.

Based upon the above, it is my medical opinion that this patient would be unable to pursue any gainful employment for which he is qualified. He does require at the present time consumption of narcotic medication to maintain his pain control. He is also unable to pursue any physical activity while standing on his feet other than for [a] 30-45 minute period of time. In addition, he will require episodes of rest during the day to alleviate his discomfort.

. . .

In summary, it is my opinion that he does have a chronic low back pain syndrome for which he would not be able to pursue gainful employment.

(Tr. 559-60.)

On February 23, 2011, Dr. Robert Cottone, a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form (PRTF) in which he opined that plaintiff's mental impairment was not severe. (Tr. 613-24.)

## IV.  MEDICAL RECORDS SUBMITTED TO THE APPEALS COUNCIL[7]

Plaintiff visited his mental health provider on July 8, 2011, who noted plaintiff to be tired.  Plaintiff reported having recently traveled 950 miles to pick up his wife's grandson and bring him to live with them.  It was noted that plaintiff continued to teach GED students and seemed to keep busy.  (Tr. 632-33.)

X-rays taken of the lumbosacral spine on September 28, 2011, showed mild loss of normal lumbar lordosis and minimal disc space narrowing and anterior osteophytosis.  (Tr. 625.)

Plaintiff visited NP Worley on September 30, 2011, and requested medication for his back pain.  Plaintiff reported having increased back spasms and that his pain was at a level five.  Plaintiff reported that Excedrin back and body no longer provided good relief.  Plaintiff also reported a recent onset of intermittent numbness in the left leg.  Plaintiff reported that he was not interested in surgical intervention.  Plaintiff reported having had epidural steroid injections in the past, which were painful and did not provide relief.  Physical examination showed plaintiff to have difficulty getting up from the examination table and to have very limited flexion of the lumbar spine.  Plaintiff refused to try extension.  Plaintiff

---

[7] In making its determination to deny review of the ALJ's decision, the Appeals Council considered additional evidence which was not before the ALJ.  The Court must consider this additional evidence in determining whether the ALJ's decision was supported by substantial evidence.  *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); *Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir. 1994).

was able to heel/toe walk without difficulty, and straight leg raising was negative. Tenderness was noted to palpation over the bilateral SI joints. No tenderness was noted along the spine. Very weak muscle spasms were noted in the back. NP Worley noted plaintiff to have exaggerated pain responses. Plaintiff was diagnosed with chronic low back pain, degenerative disc disease, and history of discectomy. NP Worley noted plaintiff's medical history and recommended that plaintiff alternate applying heat and ice to the affected area and to use a TENS unit. Mobic was prescribed. Physical therapy was recommended. NP Worley also referred plaintiff to pain management, noting that he had done well with adjustments in the past. (Tr. 627-31.)

Plaintiff also visited his mental health provider on September 30, 2011, and reported being excited about teaching GED classes and the possibility of teaching other adult education classes. Plaintiff reported that he was considering getting a teaching degree. (Tr. 631.)

On April 17, 2012, plaintiff appeared at the VAMC for follow up of his mental health treatment. Plaintiff reported that he was planning a long trip out West and was going to look at some land for building a house. Plaintiff also reported that his 101-year-old father had just been approved for an upcoming Honor Flight and that he was hoping to be able to accompany him on the trip. (Tr. 626.)

## V.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning

that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

## VI.     THE ALJ'S DECISION

The ALJ in this case applied the foregoing five-step analysis and found, first, that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. The ALJ next found plaintiff not to have engaged in substantial gainful activity since September 19, 2009, the alleged onset date of disability. The ALJ found plaintiff's degenerative disc disease and status post discectomy to be severe impairments, but that such impairments, either singly or in combination, did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found plaintiff to have the RFC to

perform sedentary work,[8] except that he can only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and can only occasionally stoop, kneel, crouch, crawl, or balance.  The ALJ determined plaintiff unable to perform any past relevant work.  Considering plaintiff's age, education, work experience, and RFC, the ALJ found that vocational expert testimony supported a conclusion that plaintiff could perform other work as it exists in significant numbers in the national economy, and specifically, die equipment operator, brush polisher, and components tester.  The ALJ thus found plaintiff not to be under a disability from September 19, 2009, through the date of the decision.  (Tr. 13-22.)

## VII.  **DISCUSSION**

### A. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)).  "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to

---

[8] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009)). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Plaintiff claims here that the ALJ erred by according little weight to the opinion of Dr. Russell because it was consistent with the other medical evidence of record and because Dr. Russell was the only physician to render an opinion regarding plaintiff's physical functional abilities. For the following reasons, the ALJ did not err in his consideration of Dr. Russell's opinion.

## B. RELATIVE WEIGHT GIVEN TO CONSULTATIVE EXAMINER'S OPINION

In determining a claimant's disability, the ALJ is required to consider the medical opinion evidence of record together with the other relevant evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). Unless the opinion of a treating physician is given controlling weight, the ALJ must explain in the decision the weight given to every medical opinion of record, regardless of its source. *See* 20 C.F.R. §§ 404.1527(c), (e)(2)(ii); 416.927(c), (e)(2)(ii). Ordinarily, the medical opinion of a one-time examining physician does not alone constitute substantial evidence upon which an ALJ may base his ultimate decision of disability. *Cox v. Barnhart*, 345 F.3d 606, 609-10 (8th Cir. 2003) (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)).

Here, as noted by the plaintiff and as acknowledged by the ALJ, the record does not contain an opinion from a treating source in this case. The only opinion evidence of record relating to plaintiff's physical functioning is that rendered by one-time consulting physician Dr. Russell. However, the mere absence of other opinion evidence is not a sufficient basis to accord Dr. Russell's opinion any greater weight than it otherwise would be entitled. Instead, the ALJ must weigh *each* opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of

the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).

In the instant case, the ALJ considered the factors set out above and properly determined to accord Dr. Russell's opinion little weight.  First, the ALJ noted that Dr. Russell performed a one-time examination at the request of plaintiff's counsel and not for the purpose of rendering treatment.  *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  The ALJ further noted that Dr. Russell's statement that plaintiff required the use of narcotic pain medication to maintain pain control was inconsistent with the medical evidence of record that showed plaintiff able to manage his pain *without* the use of narcotics.   *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Indeed, the record shows plaintiff to have last taken narcotic pain medication in October 2008.  Plaintiff thereafter was instructed to take NSAIDs, and the record shows plaintiff to have taken Excedrin.  It was not until September 2011, that is, eight months after Dr. Russell's examination, when plaintiff reported to his treating medical care provider that Excedrin no longer provided satisfactory relief.  Notably, at that time, plaintiff continued to report his pain to be only at a level five on a scale of one to ten.  *Cf. Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (conservative treatment with over-the-counter medication and limited

- 22 -

use of prescription medication inconsistent with disabling pain); *Novotny v. Chater,* 72 F.3d 669, 671 (8th Cir. 1995) (although claimant rated pain at a level ten, failure to seek regular or sustained treatment coupled with lack of prescription pain medication inconsistent with disabling pain). Finally, the ALJ properly noted that Dr. Russell's opinion that plaintiff's impairments would preclude him from pursuing gainful employment was a matter reserved to the Commissioner. An ALJ need not defer to a physician's opinion that an applicant is "disabled" or "unable to work" "because it invades the province of the Commissioner to make the ultimate disability determination." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Plaintiff argues that Dr. Russell's opinion should be accorded significant weight inasmuch as Dr. Russell is a spine specialist. While 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) encourages the Commissioner to give greater weight to the opinion of a specialist, this rule does not apply where the specialist's opinion is controverted by substantial evidence or is otherwise discredited. *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). As discussed *supra,* the ALJ properly discredited Dr. Russell's opinion for numerous well-supported reasons. As such, the ALJ was not required to give the opinion special deference under §§ 404.1527(c)(5), 416.927(c)(5).

In sum, a review of the ALJ's decision shows him to have evaluated all of the evidence of record and to have provided good reasons for the weight he accorded Dr. Russell's opinion. Because substantial evidence on the record as whole supports the ALJ's determination as to the weight he accorded Dr. Russell's opinion, the Court will not disturb the determination.

According limited weight to the only opinion evidence of record does not necessarily render the record devoid of substantial evidence upon which an ALJ can base his decision. The limitation of *opinion* evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. *See Cox,* 495 F.3d at 619-20; *see also Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); *Sampson v. Apfel*, 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support ALJ's decision). Here, there was sufficient other medical evidence of record supporting the ALJ's decision that plaintiff had the RFC to perform sedentary work with additional restrictions. Specifically, the ALJ noted diagnostic testing to show mild to moderate degenerative disc disease and that treatment providers noted plaintiff to be doing well with over-the-counter medication as supplemented by Gabapentin.

*See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (diagnosis tempered by the words "mild" or "minimal"); *Moore,* 572 F.3d at 524-25 (conservative treatment with over-the-counter medication and limited use of prescription medication inconsistent with disabling pain). The ALJ also noted that, despite plaintiff's display of stiffness and stooped posture during examinations, he nevertheless was observed to walk upright and fluidly when walking to his car. Indeed, NP Worley repeatedly noted plaintiff to display exaggerated responses during examinations. *Cf. Jones v. Callahan*, 122 F.3d 1148, 1151 (8th Cir. 1997) (ALJ may consider conservative course of treatment, limited medication, and treatment provider's observation of exaggeration of symptoms); *Ballowe v. Harris*, 650 F.2d 130, 133 (8th Cir. 1981) (claimant not prevented from performing sedentary work in circumstances where he was found to exaggerate his pain). The ALJ also noted that while some examinations showed limited range of motion, the August 2010 examination with a pain consultant showed normal range of motion about the back. It is the duty of the Commissioner to resolve conflicts in the evidence, including medical evidence. *Renstrom,* 680 F.3d at 1065; *Spradling v. Chater*, 126 F.3d 1072, 1075 (8th Cir. 1997); *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). In addition, the undersigned notes that while the ALJ accorded limited weight to Dr. Russell's opinion evidence, he did not entirely discount it. Indeed, the ALJ's RFC assessment limiting plaintiff to sedentary work, which is itself a significant

limitation, demonstrates that the ALJ did give some credit to this opinion evidence. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

A review of the decision shows the ALJ to have thoroughly discussed specific medical facts, nonmedical evidence, and the consistency of such evidence when viewed in light of the record as a whole and to have assessed plaintiff's RFC based on the relevant, credible evidence of record. *Accord* SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). Because some medical evidence supports the ALJ's determination that plaintiff could perform sedentary work with additional restrictions, the ALJ's RFC assessment must stand. *See Steed,* 524 F.3d at 875-76.

Finally, plaintiff appears to argue that the ALJ's determination to accord significant weight to Dr. Cottone's opinion was error inasmuch as Dr. Cottone did not evaluate plaintiff's physical impairments. Plaintiff's argument is misplaced. Dr. Cottone is a psychological consultant who completed a PRTF for disability determinations and rendered an opinion that plaintiff had no severe mental impairments. The ALJ relied on this opinion evidence only in relation to his finding that plaintiff's mental impairment was not severe. (Tr. 16-17.) A review of the ALJ's decision in its entirety shows that Dr. Cottone's opinion played no role in the ALJ's determination regarding plaintiff's physical ability to perform work-related functions. Plaintiff's claim otherwise fails.

## VIII. __CONCLUSION__

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination that plaintiff was not disabled from September 19, 2009, through the date of the decision is supported by substantial evidence on the record as a whole, and plaintiff's claims of error should be denied. Inasmuch as there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

Therefore,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE


Dated this <u>29th</u> day of <u>July</u>, 2014.